Gaston, 3.
 

 This bill was filed in the Court of Equity for the county of Chowan, on the 27th of February, 1836, in the name of Mary Haughton, plaintiff, an infant suing by her next friend Elizabeth Pettijohn against George W. Barney and wife Louisia, Jonathan H. Haughton, Robert H. Booth, the executor of Jonathan Haughton, deceased, and Charles Haughton, the administrator of Thomas B. Haugh-ton, and Richard B. Heath and wife and others, the heirs at law of the said Thomas B. Haughton, deceased, defendants.
 
 *394
 
 Its mriterial allegations are, that the plaintiff is the only surviving child of Joseph M.
 
 Haughton, who
 
 died in the year, 1834, and was such at the time of the death of the father of the said Joseph, Jonathan Haughton, who died in November, 1835 — that the said Jonathan on the 11th of May, 1830, being seized and possessed of a large real and personal estate, and influenced by considerations entirely unknown to the plaintiff, conveyed by far the
 
 greater part thereof to the
 
 defendant Jonathan H. Haughton his son, and the defendant George W. Barney, who was the husband of his daughter Louisa — that afterwards on the 14th of November, 1830, the defendants Jonathan H. Haughton and George W. Barney, either in pursuance of the order and direction of the said Jonathan Haughton, who, notwithstanding the deeds of conveyance aforesaid to his said son and son-in-law, exercised some control over the property
 
 thereby
 
 conveyed, or in compliance with a covenant or agreement made with the said Jonathan, did, at his instance, sign, seal and deliver a certain deed, (a copy whereof is set forth,) whereby the said Jonathan H. Haughton and George W. Barney, in consideration of the sum of five dollars, did bargain and sell unto Thomas B. Haughton a certain trust of land therein particularly described, which had' formerly been conveyed to the bargainors by Jonathan Haughton, and fifteen negroes, to have and to hold unto the said Thomas, his heirs and assignees, in trust for the following purposes, that is to say: to pay out of the said property the sum of $125 annually, during the life of Sarah Haughton, wife of the said’ Jonathan, in part discharge of a decree, or a bond given in pursuance of a decree, in Chowan Superior Court, in a suit wherein the said Sarah by her next friend John M. Roberts was plaintiff, and the said Jonathan defendant, “the said money to be paid to John M. Roberts or Sarah Haughton, he or she giving a receipt for the same to Thomas B. Haugh-ton, and it is meant that the said Thomas should attend to see that the same be paid out of the property “so conveyed,” after payment of said money, in trust to suffer the said Jonathan to occupy the land and all the negroes during his the said Jonathan’s life, and after the said Jonathan’s death to
 
 *395
 
 suffer Joseph M. Haughton to occupy the land and use the negroes during his the said Joseph’s life, and, should the said Joseph leave any children of h.is body lawfully begotten, to hold the same in trust for said children, and, should the said Joseph leave no children at his death lawfully begotten, then to hold the same in trust for Jonathan H. Haughton and Mary Louisa Barney, to them and their heirs, and to make conveyances as they shall direct. It is further alleged in the bill, that this deed, at some time after its execution, passed into the possession of Jonathan Haughton, who kept it among his valuable papers; that, about the time of the death of the said Jonathan, it passed into the possession of the defendant Roberth H. Booth, who, in violation of the rights of the plaintiff, has delivered the same to the defendant Barney, who has either destroyed or yet unjustly detains it; that, when the said deed was executed, the plaintiff’s father was ignorant of her rights, and that the plaintiff herself, by reason of her infancy and destitute situation, has been unable to assert them; that in consequence, either of the neglect of the trustee named in the said deed or of Jonathan Haughton, or of the fraud or neglect of some of the other parties to it, the said deed has never been registered nor proved for registration ; that no certain information of the existence of said deed was communicated to the friends of the plaintiff until lately, and that, as soon as they heard of the existence of it, they applied to the defendant Booth, whom they supposed to have the possession of it, and were told by him that the same was in the possession of the defendant Barney, whose interest is indirect opposition to hers, and who falsely pretends that in consequence of an agreement between himself and some other person to the plaintiff unknown, the said paper ought not to be produced for registration. The bill further alleges, that Thomas B. Haugh-ton, the trustee, died in 1831 or 1S32, that the defendant Charles was duly appointed administrator of his estate, and that the other defendants, particularly named, were the heirs at law of the said Thomas. It charges, that after the death of the plaintiff’s father, who during his life lived oh the tract so conveyed in trust, the defendant Barney directed the
 
 *396
 
 mother of the plaintiff to seek a shelter elsewhere, in consequence whereof her said mother, being much distressed in mind, in indigent circumstances, and witbal entirely ignorant of the plaintiff’s rights, abandoned the possession to the said Barney, who hath ever since continued to cultivate the same ; and that the defendant Booth, upon the death of Jonathan Haughton, took possession of the slaves so conveyed, and hath ever since either hired them out or permitted his co-defendant Barney to have the use thereof, whereby the plaintiff is entirely deprived of the benefit of the provision made for her in said deed. The prayer of the bill is, that some fit person be appointed a trustee, in the place of the said Thomas B. Haughton, deceased, to carry into execution the trusts in said deed declared ; that the defendants, Barney, Booth and Jonathan H. Haughton, be decreed to deliver up the said negroes and their increase and the possession of the said land, and to account for and to pay over the hire, rent and profits thereof; that the defendant Charles Haughton be decreed to convey the legal title in the slaves aforesaid, and the other defendants be decreed to convey the legal title in the land aforesaid, to the trustee so to be appointed upon the trusts in said deed declared ; and for such other and further relief as the plaintiff’s case requires.
 

 All the defendants putin answers. Those of the administrator and the heirs of Thomas B. Haughton, declare that they have no personal knowledge of any of
 
 the
 
 matters charged, claim no interest whatever in the property in dispute, and are ready to submit to and do whatever the court shall direct therein. The answer of the administrator, Charles Haugton, states also, that about two or three years before the death of his intestate, he heard Jonathan Haugh-ton express a determination to make the said intestate a trustee for his son Joseph’s family, and that afterwards he heard the said Jonathan several times declare that the Pettijohn family, into which his son Joseph had married, should have no portion of his property.
 

 The answer of the defendant, Jonathan H. Haughton, admits that the plaintiff is the sole surviving child of Joseph
 
 *397
 
 M. Haughton, deceased, and that this defendant and Mary Louisa, the wife of the defendant George W. Barney, are the children of Jonathan Haughton, deceased, and that at the time stated in the bill the said Jonathan conveyed to this defendant and his co-defendant, George, the greater part of his property, real and personal, “ leaving however a considerable estate, which he afterwards disposed of by will.” — ■ The defendant states, that when these conveyances were made, a bond was executed by him and Barney to his father,
 
 solely
 
 conditioned to secure his father the enjoyment of all the property so conveyed during his life ; and declares that no other bond, covenant or agreement, either in writing or by parol, existed between the parties in relation to the said property or the conveyances which had been made thereof, and that his said father had not any right of control whatever over said property, except such as arose under said bond — admits that the land and negroes described in the bill are a part of the real and personal estate which had been so conveyed — but denies that the instrument, whereof a copy is set forth in the bill, and which contains the land and ne-groes aforesaid, ever was executed as a deed or as a completed instrument, and avers that it was designedly kept undelivered — more particularly the defendant proceeds to state, that the late Jonathan Haughton, his father, entertained different projects of making provision for Jais son Joseph, sometimes expressing a desire to make him an annual allowance for life, sometimes to convey property to a trustee for him, and at other times to exclude him altogether; that at one of these times the paper writing, whereof a copy is set forth in the bill, was drawn up and signed by this defendant and George W. Barney, in the presence of the said Jonathan, and at his house — that the said Jonathan wished to have the power of making any other provision he might prefer for his son Joseph, that he was distinctly informed by both of them “ that if he executed the instrument then drawn lip by having it then singned, sealed and delivered, he would not have this power; that it was well understood by his said father, the said Barney and himself, that the deed should not be delivered, and that accordingly it was not« that this defend
 
 *398
 
 ant and the said Barney were to deliver it or to acknowledge the execution thereof at'any time or place, when they should by him be thereunto required ; that the paper was left the sitting room of his father, and this defendant, who before his father’s death removed to New York, hath never seen it since, but understands that it is in the possession of the defendant Booth. This defendant adds, that he personally informed his brother Joseph of the arrangement, as herein stated, made with his father, and that the execution of the deed by delivery would depend on his conduct and that of his family towards his father; states that his father entertained an unfavourable opinion of the wife of his brother Joseph; and that both before and after the death of his said brother, his father told him that various causes of irritation had occurred tending to produce in
 
 Mm
 
 (his said father) the determination that none of his property should go, or have a chance of
 
 going,
 
 to his son’s wife’s family.”
 

 The answer of the defendant George W. Barney is so much in substance the same with the answer of Jonathan H. Haughton, that it is unnecessary to set forth more of it than those parts wherein he mentions matters not contained in the answered his co-defendant, and those wherein he may state the same matters somewhat differently in point of expression, or more fully as'to their circumstances. Denying with his said co-defendant 1’hat his father-in-law had any right of control over the property conveyed other than under the bond before mentioned, and denying that the paper writing referred to in the bill was ever executed as a deed or any other completed instrument. This defendant states, that at various times, both before and after the conveyances made of his property to his said co-defendant and himself, he expressed to them a desire sometimes to make, and sometimes not to make, a provision for his son Joseph ; at one time he suggested the plan of securing an annuity to his said son for life out of his estate, at another to convey property to a trustee for his said son, vacillating between these plans and a determination to give him nothing; that at one of these times the paper writing aforesaid was drawn up and signed by this defendant and Jonathan H. Haughton ; that it was
 
 *399
 
 well understood that it should not be delivered to the trustee . , , . . . . nor to any of the persons taking an interest under it, nor to any person for their benefit; but should remain a paper signed and sealed but not delivered, until Jonathan Haugh-ton should require of this defendant and Jonathan H. Haugh-ton to assent to the delivery or acknowledge the execution thereof, and this the said Jonathan H. and this defendant promised to do at any time and at any place and before any persons, when so required; that the delivery was withheld when the paper was signed, because Jonathan Haughton desired to have the power to substitute another provision for his son in lieu of that therein contained, or to withdraw it altogether, and this power he was informed he could not have, if the deed should be completed ; that the paper writing was left ill this state with the said Jonathan Haughton, and has never been since seen by this defendant, until after the said Jonathan’s death. The defendant states that, some months and perhaps a year before the said Jonathan’s death, he informed this defendant that he had been looking in vain among his papers for this writing, and was anxious to get it, that afterwards, and but a short time before his death, he desired this defendant to request Robert H. Booth to call on Malachi Haughton, Esq., with whom he had deposited many of his papers, “ thinking the one he so much desired was among them, that some delay (as defendant understood) in the delivery of these papers, occurred from the want of a written order,” but this order being had, Booth obtained them ; that, after the death of Jonathan Haughton, this defendant, understanding that the paper now in question was in his possession, asked to see it, kept it for a day or two, and then returned it. He further denies that
 
 he
 
 compelled the plaintiff’s mother after the death of her father to- seek another shelter, but declares that the plaintiff’s grandfather, Jonathan Haughton, took possession of all the property, land and negroes,which his son Joseph had he'd,.after his said son’s death, and kept the same until he himself died ; denies that the plaintiff’s"lather and mother were ignorant of the writing in question as is pretended by the bill, but insists that he had been apprised of it soon after it was made, and
 
 *400
 
 ^at'!ei’,s intention that it should remain incomplete; that a few weeks after his death she was informed of it; and states, (but does not say
 
 when)
 
 that a copy of it was delivered to counsel, whom she consulted thereupon ; he de-niesithat the said paper was kept back from registration from the neglect of Jonathan Haughton, but avers that it was not registered, because of the said Jonathan’s determination that it should not be.
 

 The defendant Booth in his answer states, that, two or three months before the death of Jonathan Haughton, the said Jonathan executed his last will and testament, and thereof appointed this defendant executor; that this defendant wrote the said will, that at the time of his so doing the said Jonathan informed him, that no portion of the property, over which
 
 he
 
 (the said Jonathan,) had any control, should ever go to the family of his son Joseph ; and also distinctly told the defendant, that it was unnecessary to make any disposition of the land mentioned in the paper writing, the subject of dispute, as it already belonged to Jonathan H. Haughton and George
 
 W.
 
 Barney by deed ; that defendant knows of no circumstance inducing a belief that the said writing was ever delivered, but believes that it never was delivered as stated in the answers of said Jonathan H. Haughton and George W. Barney; that, two or three days before the death of his testator and in consequence of a written order from him, the defendant obtained from Malachi Haughton, Esq. a number of papers, which had been deposited with him, and among them the iustrumeut which the plaintiff now seeks to establish ; that the defendant shortly thereafter called on his said testator to deliver them, but found him too ill to attend to business; that he kept them as his executor; that at the request of the defendant, George W. Barney, he handed to the said Barney the instrument in question, who kept it not more than two or three days and then returned it; that on returning it the said Barney requested this defendant to obtain legal advice respecting the operation of the said instrument, and advised him to give a copy thereof to any person, who might apply in behalf of any supposed to be interested therein ; that, during the short time that the
 
 *401
 
 instrument was in Barney’s hands, the mother of the plaintiff called on him for it, and he informed her where it then was, but assured her that he would procure it without delay and would then hand it, or at all events a correct copy thereof, to her: that no further application has been made to him; that he took the legal advice which Barney requested him to obtain ; that, in pursuance of that advice, he has kept the instrument in his possession, and has it ready to be produced ; that he has set up no claim to nor pretended to interfere with any of the property mentioned in said instrument, considering it as no part of the estate of his testator, but to haye been conveyed by him in his lifetime to the defendants Jonathan H. Haughton and George W. Barney.
 

 The instrument, which the plaintiff prays to be established, is exhibited. It corresponds in all respects with the copy given thereof in the bill, purports tobe “signed and sealed” by Jonathan H. Haughton and George W. Barney, in thepresenceof Jonathan Haughton. The will of the said Jonathan is also exhibited. It purports to have been executed on the 18th of August, 1835, and it was proved at the February Term following of Chowan County Court; it nominates George W. Barney and Robert H. Booth as executors,- and, except a special provision therein made in respect to three of his servants, whom he professes to reward for their fidelity and .attention to the testator during his last illness, it gives all the testator’s real and personal estate to be equally-divided between the children of his son Jonathan H. Haugh-ton, his daughter L. C. Barney and his deceased son Silus M. Haughton, with limitations over to the survivors and survivor upon any of them dying without issue at their death, and, it the survivor die without issue, then over to his “ aforesaid children then living, or to their heirs,” And it contains this express clause: “I give nothing to the’ children of my son Joseph, nor do I intend it.”
 

 The plaintiff has taken the depositions of Malachi Haugh-ton, Esq., of her mother Elizabeth Haughton, and of her mother’s sister, Sarah Pettijobn. Mr. Haughton states that Jonathan Haughton, some years before his death, deposited
 
 *402
 
 with the witness several papers, among which was the one in question; that the witness told him this paper ought to be registered, and he replied that he wished to have an alteration made — and that the witness, a short time belore or after the death of the said Jonathan, upon his written order, delivered these papers to the defendant Booth. Elizabeth Haughton testifies, that she had understood from Jonathan Haughton, that there was a deed conveying negroes and land for the benefit of Joseph Haughton’s children, and shortly afterwards the said Jonathan informed her that Yio-let, one of these negroes, was dead, but that he would give another in the place of Yiolet; that, at another time, speaking of the negroes that were at the plantation where Joseph Haughton resided in his lifetime, he said that he always intended that the negroes and plantation, at his death, should goto the children of Joseph Haughton; and that, about a month before his death, he sent for the witness and informed her that there was a handsome support provided for the surviving child of Joseph Haughton, . This witness named the negroes, which she understood from Jonathan Haughton were conveyed for the benefit of Joseph Haughton’s children, and these correspond with th& names of those mentioned in the contested deed. She does not state whether
 
 these
 
 were or were not the same negroes that were at the plantation when Joseph Haughton resided there, but she declares this plantation to be the same tract, which, she understood from Jonathan Haughton, was conveyed for the benefit of his son Joseph’s children. This witness also testifies, that on the day of the funeral of her husband, the defendant Jonathan H. informed her that there was a provision made for her children beyond his father’s power, and, if he survived his father, he would see that they had justice done to them. She also testifies, that, shortly after the death of her husband, the witness and the defendant Barney were conversing about the conveyance, when he said that he and Jonathan H. Haughton had given the property in a deed of gift to her children, that he expected the deed was lost, but he was willing to give the properly again and would do it.— Sarah Pettijohn testifies, that she heard Jonathan Haughton
 
 *403
 
 on one occasion tell her sister, that he always intended the plantation and the negroes for Joseph Haughton’s children and that she has heard him make similar remarks on other occasions. She also declares that she heard the observations made to her sister by the defendant Jonathan, as slated in her deposition, on the day of Joseph Haughton’s funeral.
 

 Witnesses have been also examined on the part of the defendants, but the only part of their evidence, which is deemed of any moment, is that of John Poplestan, who testifies to declarations of Jonathan Haughton, that neither his son Joseph nor any of the family of the Pettijohns, grand-mother or aunts of the plaintiff, should ever have any of his estate.
 

 Upon these exhibits and proofs the plaintiff insists that she has established the instrument, whereof a copy is given in her bill, as a complete deed. If the formal execution of this instrument had been proved, the presumption that it was intended by the parties as a complete instrument would have arisen, and this presumption could not be overthrown but by clear proof that in truth there was no delivery and that this was well understood at the time. But there is no evidence of a formal execution. The only persons present at the time of the transaction were the supposed grantors and Jonathan Haughton. They, in their answers responsive to the allegations of the bill in this respect, deny absolutely any delivery; and this bill was not filed, until after Jonathan Haughton, who might have thrown light upon the transaction, was removed by death. It is true that he attested the instrument as a subscribing witness, and an inference might thence arise, that he had seen it formally executed, were it not that his attestation is
 
 spezial,
 
 that the instrument was “ signed and sealed” in his presence, and thus excludes the inference that he had also seen it
 
 delivered.
 
 In the want of evidence of formal execution — in opposition to an express denial of such execution — the burthen is thrown upon the plaintiff of shewing, that, nevertheless, the instrument was designed by the parties to be a complete one. And the proof to this end should be very clear and cogent before it can overrule the precise and positive denials of this supposed in
 
 *404
 
 tent in the answers of the defendants. They aver, that so far from intending the instrument, when signed and so attested and left with Jonathan Haughton to be their absolute an^ finished deed, the instrument was intentionally and advisedly left thus unfinished and imperfect, in order that it should or should not be consummated thereafter as Jonathan Haughton might or might not require. And upon an examination of the evidence, we think that instead of contradicting, it confirms this representation.
 

 It is manifest, that, notwithstanding the forms of this transaction, the provision, made or purporting to be made by this instrument for Joseph Haughton and his children, was one proceeding in truth from Jonathan Haughton and not from bis son and son-in-law. He had before conveyed to them the far greater part of his estate — upon what consideration we know not. The bill asserts, that, notwithstanding these conveyances, he, by án understanding or agreement with them, retained the power of disposition over the property.— This they deny, but they shew by their conduct, that although there might have been no agreement or understanding, by which he retained a direct control over the property, he retained or possessed so much control over
 
 lliem,
 
 as to obtain such a disposition of the property contained in this instrument as he desired. It was at his instance the writing was prepared, the instrument signed, sealed and left in his hands. Indeed all the witnesses, who have been examined, with respect to a provision as intended or not intended for Joseph Haughton and his children, speak of it as one to proceed from Jonathan Haughton. He therefore, though not in form, was, in-effect, a party grantor, and his possession of the writing, after it had been sealed by the formal grantors ánd attested by himself, raises but a very faint, if any, presumption, that it was delivered to him, or that he kept it for the trustee or for those who were to derive interests under it. He may well have taken and kept it, as the defendants allege that he did, as an instrument as yet imperfect and subject to his control, but which he could cause to be perfected, if and when he pleased. Thus it is that his conduct, and, as
 
 *405
 
 a part thereof, his declarations have been resorted to, in order to give a character to this possession.
 

 There is no evidence, that he ever delivered this instrument to the trustee or even apprized the trustee of its existence. Notwithstanding the first trust declared in it was to be an application
 
 personally
 
 by the trustee of the profits of the property to the payment of the decree against Jonathan Haughton, no act of the trustee, making such application or any other act under the trusts declared, is shewn to have been done. From the time when the instrument was signed up to his death, a period of five years, it remained always in the hands of Jonathan Haughton or in those of his depository, and it remained unregistered. When apprized by Mr. Malachi Haughton of the necessity of registration to give it effect, he declined to have it registered upon the ground that he designed to alter it. One can scarcely doubt upon these circumstances, that he regarded the instrument as one not perfected, and which he had the ability to cause to be perfected. It does indeed appear from the testimony of Mrs. Elizabeth Haughton, that he spoke to her of “a deed” containing a provision for her children, but he might thus have spoken of this instrument, though wanting the perfection of delivery, without serious impropriety of language. There would be great danger of error in determining the character of the instrument from a general observation of this kind.— The witness does not state the details of the conversation in which this remark occurred, nor for what purpose the information of the existence of such a paper was communicated to her. It does not appear that he informed her where the deed was, or what he wished to be done in respect thereof.— Nor can one lay very great stress on the representations, which are testified by this witness and her sister Mrs. Petri-jobn to have been made by Jonathan II. Haughton and George W. Barney, in relation to a provision for her child, which it was beyond the power of her grand-father to deprive her of. They amounted in effect to little more than assurances, that, if he should refuse to give validity to some provision, they would as they could, secure to the plaintiff the benefit of it. Why it is that they have not complied
 
 *406
 
 with these assurances does not indeed appear. It is to be hope that they have sufficient reasons for this seeming breach of good faith, but the plaintiff does not found, and canriot found, a claim to relief upon their promises.
 

 The testimony as to the intentions of Jonathan Haughton to provide for the plaintiff, corresponds with the statement made in the answers. These intentions do not seem to have been permanent. At different times he expressed, and no doubt entertained, different purposes in this respect, and, in the last most solemn act of his life, the making of his will, he has very emphatically declared that he gives nothing to the children of his son Joseph Haughton, and that he intends to give them nothing.
 

 We feel ourselves obliged to declare that the plaintiff has not established the material allegation in her bill, that the defendants Jonathan H. Haughton and George W. Barney did sign, seal and deliver the instrument, which is therein referred to as their deed, and therefore we must dismiss the bill. But we think the case one, in which a judicial investigation was proper, and we direct the bill to be dismissed without costs except as to the administrator and heirs of the trustee. The plaintiff (or her next ifiend,) must pay their costs. As they had a common defence and approved by the same Solicitor, there will be but one Solicitor’s fee taxed to them.
 

 Per Curiam. Decree accordingly.